(30 P.3d 1037)

No. 85,733

STATE OF KANSAS, *Appellee*, v. ANTHONY JAMES BETZ, *Appellant*.

Opinion filed August 3, 2001.

*Autumn L. Fox*, of The Law Office of Autumn L. Fox, of Abilene, for appellant.

*Russ Roe*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before GERNON, P.J., BRAZIL, S.J., and JOHN J. BUKATY, JR., District Judge, assigned.

BUKATY, J.: Anthony James Betz appeals his convictions of sale of methamphetamine, possession of methamphetamine without a tax stamp, and receiving proceeds derived from violations of the Uniform Controlled Substances Act. We affirm in part and reverse in part.

Betz raises two arguments on appeal. First, the convictions of sale of methamphetamine and unlawfully receiving drug proceeds are multiplicitous. Second, there was insufficient evidence to conclude that he was guilty beyond a reasonable doubt.

The incident giving rise to the charges occurred when a confidential informant (CI) for the I-70/I-35 Drug Task Force purchased methamphetamine at the home of Brian Loy on June 9, 1998. Prior thereto, the CI had reported to agents that he had arranged to purchase a half ounce (approximately 14 grams) of the drug from Betz at this location and that he would receive a page when Betz had arrived at the apartment. Betz had previously worked for the task force as a CI himself. The CI also relayed to agents that Betz probably would not say much, if anything, during the transaction.

After the CI received the page, agents searched and fitted him with a body wire, searched his car, and gave him $650 in buy money. They then followed the CI to the area of Loy's apartment. The audio transmitter allowed them to monitor the transaction, but they could not maintain visual contact once the CI went into the apartment. They did not do surveillance on the apartment and could not verify who was inside.

The CI returned without the cash and with two baggies containing what proved to be 9.51 grams of methamphetamine (10.6 grams, including packaging). The packets did not have tax stamps. The CI reported that Betz, Loy, and Loy's girlfriend, Linda Mick, were in the apartment. He said he counted out the money, and Betz took the cash and handed him the two baggies from his shirt pocket.

Betz was arrested approximately 6 months later. Agents never recovered the buy money.

At trial, Loy and Mick (by then Loy's former girlfriend) both testified. Mick testified that Betz was a friend and sometimes vis-

ited the apartment at the same time as the CI but denied witnessing the controlled buy. However, she identified her voice as one of the voices on the tape recording of the buy. Loy confirmed in an interview with a task force agent that Betz was present. He also testified to a conversation in which Betz stated he thought the CI was working for the police and wearing a wire on the occasion of the controlled buy.

The jury returned a verdict finding Betz guilty on all three counts. The court then sentenced him to concurrent sentences with a controlling sentence of 30 months.

Betz first argues that the sale charge and the receipt of proceeds charge are multiplicitous because both charges required proof of the same unlawful act, namely, sale of drugs.

The appellate courts of this state have addressed the issue of multiplicity several times but never as it pertains to these two charges. Multiplicity consists of the charging of a single offense in more than one count of a complaint or information. *State v. Vontress*, 266 Kan. 248, 255, 970 P.2d 42 (1998). The issue this raises is that it can result in multiple punishments for a single offense, which is prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and section 10 of the Kansas Constitution Bill of Rights. 266 Kan. at 255. This court's standard of review is plenary. See 266 Kan. at 255.

The constitutional prohibitions against multiplicity do not always prohibit a single transaction from supporting multiple convictions. *Vontress*, 266 Kan. at 255-56, states as follows:

"The State may not split a single offense into separate parts where there is a single wrongful act which does not furnish the basis for more than one criminal prosecution. However, where the criminal conduct of the defendant supports convictions for more than one crime, K.S.A. 21-3107 provides statutory authority for multiple convictions even though the criminal conduct of a defendant consists of a single transaction. *State v. Mincey*, 265 Kan. 257, 262, 963 P.2d 403 (1998).

"The test concerning whether a single transaction may constitute two separate and distinct offenses is whether the same evidence is required to sustain each charge. If not, the fact that both charges relate to and grow out of the same transaction does not preclude convictions and sentences for both charges. 265 Kan. at 262-63. Multiplicity does not depend upon whether the facts proved at trial are actually used to support conviction of both offenses charged; rather, it

turns upon whether the elements of proof necessary to prove one crime are also necessary to prove the other. 265 Kan. at 263."

With these principles in mind, we must examine the charging documents. The complaint in Count One, in relevant part, charged Betz as follows:

"Comes now Julie McKenna, Saline County Attorney, for and on behalf of the State of Kansas, and gives the Court to understand and be informed that in Saline County, Kansas, on or about the 9th day of June, 1998, one ANTHONY JAMES BETZ did then and there unlawfully, willfully and feloniously sell a stimulant drug, to wit: methamphetamine. K.S.A. 65-4161 (1997 Supp.) (Sale of Methamphetamine)."

Count three charges in relevant part:

"That in Saline County, Kansas, on or about June 9, 1998, one ANTHONY JAMES BETZ did then and there unlawfully, willfully, feloniously, knowingly or intentionally receive or acquire proceeds or engage in transactions involving proceeds, known to be derived from any violation of the uniform controlled substances act . . . . K.S.A. 65-4142 (Unlawfully Acquire Proceeds)."

Neither of the statutes under which Betz was charged define the terms "sell" or "proceeds." Looking elsewhere, we note that to "sell" means: "To transfer (property) by sale." Black's Law Dictionary 1365 (7th ed. 1999). "Sale," then, is defined as: "1. The transfer of property or title for a price. 2. The agreement by which such a transfer takes place." Black's Law Dictionary 1337. "Proceeds" are defined as: "The value of land, goods, or investments when converted into money; the amount of money received from a sale." Black's Law Dictionary 1222.

The State argues that the charges are not multiplicitous because the receipt of proceeds charge involved in Count Three requires proof of an act not required by the sale of methamphetamine statute involved in Count One, namely, receiving money. We disagree.

The legal definition of proceeds includes more than just the money received from a sale. It also includes within its meaning the value of goods when converted into money. Whether a seller of goods actually receives money or other goods or services or a mere promise of payment at the time of a sale, he or she has received value, and each of these methods of exchange constitutes proceeds. When the evidence proves the crime of illegal sale of drugs, that

same evidence necessarily proves the crime of receiving illegal drug proceeds or engaging in transactions involving such proceeds.

Applying these definitions to the above two charges against Betz, we conclude that the elements of proof necessary to prove Count One were also necessary to prove Count Three, *i.e.*, that Betz transferred an illegal controlled substance in return for something of value or the promise to pay something of value. In other words, the same evidence necessarily proved both charges. The evidence at trial established that Betz transferred a quantity of methamphetamine to a confidential informant and received money in the amount of $650. This one transaction cannot provide the basis for the charge contained in Count One and also the charge in Count Three.

Betz next contends that the uncorroborated testimony of a CI was insufficient to support his convictions. The occurrence of the transaction is undisputed. The only issue is the identity of the seller.

When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of the all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Johnson*, 266 Kan. 322, 326, 970 P.2d 990 (1998).

The testimony of the CI, Loy, and Mick, if believed, established that Betz was inside Loy's apartment at the time of a methamphetamine buy, that the CI gave Betz money, and Betz gave him drugs in return. The evidence allows the inference that Betz did not speak because he was suspicious of the CI. Loy and Mick's testimony corroborated that of the CI in that they confirmed the presence of Betz in the apartment at the time of the buy and that Betz stated that he suspected the CI of wearing a wire. The procedure of the controlled buy (*i.e.*, the searching of the CI before he entered the apartment and then when he left) corroborates the testimony of the CI that a drug sale occurred.

Moreover, the jury was given an instruction on aiding and abetting. All the jury had to believe was that the sale could not take place until Betz arrived. Whether or not Betz accepted the buy money and delivered the methamphetamine to the CI, the jury

could validly infer that Betz brought it to the apartment and, thus, aided and abetted Loy with the intent of furthering the sale.

The trial court instructed the jury to consider with caution the testimony of an informant who receives benefits from the State. The CI's agreement with the State and his prior convictions involving dishonesty were disclosed. The jury still chose to believe the CI. The evidence that Betz participated in the sale was sufficient when viewed in the light most favorable to the State.

The absence of a tax stamp on the packets was fully supported by the testimony of a task force agent.

The conviction of receiving proceeds from an illegal drug transaction is reversed. The convictions of sale of methamphetamine and possession of methamphetamine without a tax stamp are affirmed.

Affirmed in part and reversed in part.